NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 5 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ZEST ANCHORS, LLC, DBA Zest Dental Solutions, DBA Zest IP Holdings, LLC, <br><br>     Plaintiff-counter-defendant-Appellee, <br><br>   v. <br><br> GERYON VENTURES, LLC, DBA DESS-USA, DBA Terrats Medical Sociedad Limitada, <br><br>     Defendant-counter-claimant-Appellant. | No.   22-55704 <br><br> D.C. No. <br> 3:22-cv-00230-TWR-NLS <br><br><br> MEMORANDUM* |
| ZEST ANCHORS, LLC, DBA Zest Dental Solutions, DBA Zest IP Holdings, LLC, <br><br>     Plaintiff-counter-defendant-Appellant, <br><br>   v. <br><br> GERYON VENTURES, LLC, DBA DESS-USA, DBA Terrats Medical Sociedad Limitada, <br><br>     Defendant-counter-claimant-Appellee. | No.   22-55778 <br><br> D.C. No. <br> 3:22-cv-00230-TWR-NLS |

\*    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Southern District of California
Todd W. Robinson, District Judge, Presiding

Argued and Submitted March 17, 2023
Pasadena, California

Before: LEE, BRESS, and MENDOZA, Circuit Judges.

This case involves trademark and trade dress claims between two competing companies that make similar denture attachment products. Zest Anchors, LLC sued Geryon Ventures, LLC (DESS) for imitating the look of its LOCATOR® product, which consists of various pieces that allow dentists to attach dentures to a patient's jaw.

DESS now appeals the district court's order granting Zest a preliminary injunction preventing DESS from using the claimed trade dress associated with Zest's LOCATOR® product (the Trade Dress). Meanwhile, Zest cross-appeals the district court's refusal to grant a preliminary injunction preventing DESS from using Zest's claimed trademarks in the colors of the LOCATOR® product's inserts (Color Marks). We have jurisdiction over this case under 28 U.S.C. § 1292(a)(1). We reverse and remand in part and affirm in part.

Two parts of the LOCATOR® denture attachment product are relevant to these appeals: the abutment and the inserts. The abutment sits on top of a bone screw that is secured in a patient's jaw. It has a gold-colored coating and a trilobate-shaped

2

receiving hole, which allows a torquing tool to be used to attach the abutment to the bone screw. The colored inserts sit on top of the abutment and connect to the denture. They come in six colors, each of which corresponds to a particular retention strength for the denture. When in use, the denture entirely covers the LOCATOR® product.

1.    Color Marks trademark claim:    We reverse and remand the district court's order denying Zest a preliminary injunction against DESS's use of the Color Marks. The district court erred in finding that the Color Marks have utilitarian functionality.

The "test for functionality proceeds in two steps." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006). First, a court must evaluate a claimed trademark for utilitarian functionality. *Id.* If the mark lacks utilitarian functionality, the court must then proceed to the second step of the test to evaluate it for aesthetic functionality. *Id.* If the mark has either utilitarian or aesthetic functionality, it is ineligible for protection under trademark law. *See id.*

Because Zest's claimed trademarks consist solely of colors, the Color Marks have utilitarian functionality only if the claimed colors are superior to alternative colors in performing the function that they were designed to perform.[1] *See Moldex-*

---

[1] We construe Zest's Color Marks claim—unlike the color scheme element in the Trade Dress claim—to cover only the use of six specific colors (whether used individually or in groups of three) to denote retention strength *without regard* to their

3

*Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 887 (9th Cir. 2018) (explaining that a claimed color selected for its visibility may lack utilitarian functionality where alternative colors are "equally or more visible"); *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 166 (1995) (explaining that a claimed color for a dry-cleaning press pad serves no utilitarian function where other colors are equally useful in performing the function of preventing stains).

Here, the district court erred in determining that the Color Marks have utilitarian functionality simply because the colors serve to differentiate the inserts' retention strengths—without first considering whether other colors could do so equally well. As the district court elsewhere noted, there is no evidence in the record that the six particular colors covered by the Color Marks are superior to alternatives in differentiating retention strengths. In other words, the Color Marks do not have utilitarian functionality because although colors in general may be necessary to denote retention strength, other colors could be used just as effectively.

On remand, the district court should consider the second step in the functionality inquiry: aesthetic functionality. *Au-Tomotive Gold*, 457 F.3d at 1072. A claimed trademark has aesthetic functionality when "protection of the feature as a

---

specific corresponding retention strengths. Put another way, we do not interpret Zest's Color Marks claim—or the district court's order on that claim—to encompass a particular color's association with a specific retention strength (*e.g.*, blue inserts for 1.5 pounds of retention strength).

trademark would impose a significant non-reputation-related competitive disadvantage." *Id.* Generally, product features that have aesthetic functionality "serve an aesthetic purpose wholly independent of any source-identifying function." *Id.* at 1073.

The district court should thus assess on remand whether protecting the claimed colors would impose a non-reputation-related competitive disadvantage by denying competitors the use of six commonly used colors—including two of the three primary colors and four of the six primary and secondary colors available—to differentiate retention strengths. To be clear, we reverse the denial of a preliminary injunction on this claim only because the district court's basis for denying relief— the asserted utilitarian functionality of the colors—was error and it did not continue to the second step of the functionality analysis. And if necessary, the district court should also consider any remaining elements required to support a preliminary injunction on the Color Marks claim.

2. <u>Trade Dress claim:</u> Based on the record before us, we affirm the district court's order granting Zest a preliminary injunction against DESS's use of the Trade Dress. To begin with, we read the preliminary injunction to cover only the complete Trade Dress—that is, the use of all six specific insert colors in a product suite, with the same colors corresponding to the same retention strengths as in the Trade Dress,

5

along with a gold, trilobate-shaped abutment head.[2]

Because the Trade Dress consists of the LOCATOR® product's overall appearance, it is functional "if everything that affects [its] appearance is functional." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 866 (9th Cir. 2020). There are, to be sure, some functional features in the LOCATOR® product's design. The abutment itself appears to be entirely functional, as its gold-colored titanium nitride coating enhances durability and resistance to bacterial colonization, and its receiving hole's trilobate shape provides compatibility with Zest's torquing tool. And we do not discern any nonfunctional design choices in the manner in which Zest has combined or physically arranged the abutment with the colored inserts. *See id.* at 867.

At the same time, the district court did not clearly err in determining at the preliminary injunction stage that the Trade Dress's overall appearance is nonfunctional on the theory that the color scheme for the inserts is nonfunctional.[3]

---

[2] At oral argument, counsel for amicus Biomet 3i, LLC suggested that Zest had taken the position that the preliminary injunction could cover even individual parts of the Trade Dress (*e.g.*, gold abutment, red colored insert). We do not read the district court's order to extend that far. If Zest seeks broader protection for the Trade Dress, the district court must make factual findings to support a broader injunction, including (where relevant) findings on the impact of a market for LOCATOR® replacement parts and findings on the competitive disadvantages posed by extending broader protection to the Trade Dress.

[3] To be clear, we interpret the color scheme in the Trade Dress to be narrower than the Color Marks trademark claim by encompassing all six colors in combination

Based on the record before us, (1) the color scheme does not appear to confer any utilitarian advantage in the LOCATOR® product's manufacture or performance (relevant to utilitarian functionality) and (2) extending protection to the color scheme does not appear to impose a significant non-reputation-related competitive disadvantage (relevant to aesthetic functionality) because a competitor could still use different colors to denote various retention strengths. *See id.* at 865. Put another way, we understand the preliminary injunction to only forbid a competitor from using the same colors to denote the same retention strengths as in the LOCATOR® product. That is precisely what DESS did when it effectively mimicked the LOCATOR® color scheme.

During oral argument, DESS raised whether the color scheme here might have utilitarian functionality by supporting a market for compatible replacement parts for Zest's LOCATOR® product, which allegedly has predominant market share. According to DESS, it would not be practical to use different colors than the ones used in the LOCATOR® product to denote particular retention strengths (*e.g.*, red instead of blue for 1.5 pounds of retention strength) because that would confuse dentists who are accustomed to working with the LOCATOR® product.

---

with *specific corresponding* retention strengths (*e.g.*, blue inserts referring to 1.5 pounds of retention strength), whereas the Color Marks claim covered the colors individually or in groups of three and without regard to their corresponding retention strengths.

We do not decide whether a product's appearance has functionality when imitating that appearance is necessary to facilitate a market for compatible replacement parts because the parties did not adequately address this argument in their briefs and the district court made no factual findings about the market for LOCATOR® product replacement parts. We leave that question for the district court to consider in the course of further proceedings on remand.

As to the Trade Dress claim, we further discern no error in the district court's conclusions that Zest established secondary meaning and likelihood of confusion, that Zest would suffer irreparable harm without a preliminary injunction, and that the balance of equities and the public interest favor a preliminary injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

**REVERSED AND REMANDED IN PART; AFFIRMED IN PART.[4]**

---

[4] The parties shall bear their own costs on appeal.